UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-655-MOC

| | |
|---|---|
| LATOYA HUSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| SCHWAN'S CONSUMER BRANDS, INC., | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's motion for summary judgment. (Doc. No. 43). Plaintiff opposes Defendant's motion. (Doc. No. 47). For the following reasons, the Court will **DENY** Defendant's summary judgment motion.

I.   Factual Background

In January 2019, Defendant Schwan's Consumer Brands, Inc. ("Schwan's") hired Plaintiff Latoya Hush ("Hush") as a Route Relief Driver. Hush was tasked with delivering frozen goods to grocery stores in North Carolina and South Carolina and placing products inside the stores' freezers for subsequent stocking by a Schwan's Customer Service Representative. In July 2019, Schwan's offered Hush a new position, as a Single Route Agent—Small Route. In her new position, Hush was required to check shelves for product, restock, and complete orders. Hush was also responsible for retrieving new products from the depot and delivering them to stores.

In March 2019, Hush was injured at work. She filed a worker's compensation claim, which Schwan's accepted. Hush was placed on short-term work restrictions following consultation with her doctor, but she contends that Defendant failed to accommodate those restrictions. Hush complained several times about working beyond her restrictions. Eventually,

1

in May 2019, Hush's doctor put her on sit-down only work restrictions. Schwan's, unable to accommodate Hush's restrictions, put her on a leave of absence.

In July 2019, Hush returned to work with no restrictions. Later that month, Hush injured her knee and wrist on the job. On the advice of her supervisors, Hush reported the incident to Schwan's' worker's compensation insurer. Schwan's accepted Hush's second worker's compensation claim. Hush was again placed on work restrictions, which Plaintiff contends that Schwan's again failed to accommodate. Hush complained about working beyond her restrictions to no avail.

On July 31, 2019, Hush was exiting the highway at the end of her shift. She noticed a car driving erratically. When she stopped at a red light, the operator of the vehicle pulled up beside her, screaming and gesticulating. Hush decided to open the truck's window to communicate with the driver. Hush placed her vehicle in neutral, pulled the parking brake, continued depressing the brake pedal, unclipped her seatbelt, and reached over to roll down the manual window. She then re-fastened her seatbelt. The driver claimed Hush had cut him off. Once the light turned green, Hush pulled into a gas station. After she parked, but before she could exit the vehicle, the driver snatched her door open, cursed at her, and slammed the door on her leg. Hush returned to the depot and informed her manager about the incident the following day.

On August 15, 2019, Hush participated in an investigation call regarding the July 31 incident. Apparently, the driver who followed her to the gas station had called Schwan's to complain about Hush's driving. On the call with Hush were Mr. Joe Whatton, Ms. Riley Ries, Mr. Terrance Mackey, and Ms. Laurin Davis.[1] Hush explained what had transpired on July 31.

---

[1] Mr. Joe Whatton is Schwan's' regional manager. Ms. Riley Johnson Ries is a human resources generalist. Mr. Terrance Mackey, who hired Hush as a driver, is an area sales distribution manager. Ms. Laurin Davis was Hush's direct supervisor.

2

She mentioned removing her seatbelt after stopping the vehicle. Mr. Whatton told Hush that, based on her account, she had done the right thing.

According to Hush, on August 19, 2019, Schwan's again assigned Hush to work beyond her restrictions. Despite Hush's concerns, her supervisor insisted that Hush complete the assignment. Hush's regional manager (Mr. Whatton) told her to "stick it out" and "[j]ust get it done." (Hush Dep. 94:17–20). Later that day, Hush informed Ms. Carol Clark (Schwan's senior leave specialist) that she had again been required to work beyond her restrictions. Ms. Clark requested proof, which Hush provided the following day. Ms. Clark did not respond.

On August 20, Hush told Mr. Whatton that she had complained to Ms. Clark about being forced to work beyond her restrictions. Seven hours later—five days after the August 15 investigation call—Ms. Ries (Schwan's human resources generalist) emailed Steve Drake (Schwan's safety manager) seeking support for the conclusion that Hush's actions on July 31 had violated Schwan's seatbelt policy.

On August 21, 2019, Whatton led a call terminating Hush. While there is some dispute over who made the decision to terminate Hush (Mr. Whatton or Ms. Ries), Hush was apparently terminated for violating Schwan's seatbelt policy during the July 31 incident. While Plaintiff and Defendant acknowledge that Schwan's maintains a zero-tolerance seatbelt policy, violation of which necessarily results in an employee's termination, Plaintiff and Defendant disagree as to the contours of that policy, and whether Hush violated it on July 31, 2019. Compare (Doc. No. 42 at 5) with (Doc. No. 47 at 11–12).

II. Procedural Background

In October 2021, Hush sued Schwan's in North Carolina state court. Hush alleged two causes of action: violation of the North Carolina Retaliatory Employment Discrimination Act

3

("REDA") and wrongful discharge in violation of North Carolina public policy. Schwan's removed the action to this Court two months later. While Hush raises only state law claims, this Court has jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Hush moved to remand, but this Court denied her motion. (Doc. Nos. 24, 31). In December 2023, the parties reached an impasse following attempted mediation. (Doc. No. 42).

In January 2024, Defendant moved for summary judgment. (Doc. No. 43). Plaintiff opposed Defendant's motion, and Defendant filed a reply. (Doc. Nos. 47, 48). This Court held a hearing on Defendant's motion in February 2024. This matter is now ripe for disposition.

### III. Standard of Review

Summary judgment is warranted where the movant shows (1) the absence of any genuine dispute of material fact and (2) that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the dispute under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact subject to genuine dispute if a reasonable jury could find in favor of either party. Id. Ruling on a motion for summary judgment, the Court construes all facts and inferences therefrom in the light most favorable to the non-movant. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant—here, Defendant—bears the burden to dispel any genuine disputes of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes this threshold showing, the burden shifts, and the non-movant must adduce specific, material facts

that give rise to a genuine dispute. Id. at 324; Anderson, 477 U.S. at 248. Naked allegations and conclusory denials are insufficient for a nonmovant to survive summary judgment. Anderson, 477 U.S. at 252.

IV. Discussion

The Court understands Hush's REDA claim to rely on inferential proof. Under the burden-shifting framework applied to such REDA claims, Hush must show (1) that she engaged in activity protected by REDA, (2) that she suffered adverse employment action, and (3) that the adverse employment action was taken because Hush exercised her REDA rights. Fatta v. M & M Properties Mgmt., Inc., 221 N.C. App. 369, 371–72 (2012). If Hush satisfies this tripartite test, the burden shifts to Schwan's to show that there was a valid non-retaliatory justification for the adverse employment action. Id. If Schwan's meets this burden, the burden shifts back to Hush to show that the allegedly valid justification was pretext for retaliation. Id. Hush's wrongful discharge claim follows the same formula, except her protected activity need not be protected by REDA specifically. Salter v. E & J Healthcare, Inc., 155 N.C. App. 685, 693 (2003).

The first element of the REDA inquiry is whether Defendant engaged in REDA-protected activity. Hush's filing of worker's compensation claims is clearly protected by REDA. Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 222 (2005). But Hush's August 19, 2019, complaints to Ms. Clark and Mr. Whatton present a closer call. "[W]hile REDA does not require filing a formal claim, it does require more than simply complaining to a manager." Hadley v. Duke Energy Progress, LLC, 677 Fed. Appx. 859, 862 (4th Cir. 2017) (citing Pierce v. Atl. Group, Inc., 219 N.C. App. 19, 19 (2012)). Complaints to human resources, alone, are likewise not REDA-protected. See May v. Remedy Diner, Inc., No. 5:16-cv-116-BO, 2017 WL 2304454, *4 (W.D.N.C. May 25, 2017). And while repeated complaints to a company's CEO are protected

5

by REDA, Driskell v. Summit Contracting Grp., Inc., 325 F. Supp. 3d 665, 672 (W.D.N.C. 2018), aff'd, 828 F. App'x 858 (4th Cir. 2020), complaints to other senior employees (like a Senior Occupational Health and Safety Specialist) may not be so protected. Aaron v. Day & Zimmerman, Inc., No. 7:08-CV107-BR, 2008 WL 11431055, at n.5 (E.D.N.C. Sept. 26, 2008).

Taking the facts in the light most favorable to Hush, the Court concludes that this case is more like Driskell than Aaron, neither of which bind this Court. Here, Hush complained multiple times on multiple occasions to multiple supervisors. Her August 2019 complaint came on the heels of multiple unambiguously protected worker's compensation claims, and Hush took care that her complaint reached her regional manager (Mr. Whatton), "who oversaw all employees within the chain of command in Ms. Hush's region." (Doc. No. 47 at 2) (citing Laurin Davis Dep. 20:5–7). True, Mr. Whatton is not Schwan's CEO, and so this case is distinguishable from Driskell. But Hush's complaints are clearly "more than simply complaining to a manager," as required by the Fourth Circuit. Hadley, 677 Fed. Appx. at 862.

Hush easily satisfies the second prong of her prima facie REDA claim. Schwan's admits they fired Hush. Termination is a classic example of adverse employment action.

To satisfy the third element of her prima facie REDA claim, Hush must show that Schwan's fired her because she exercised her REDA rights. Wiley v. United Parcel Serv., Inc., 164 N.C. App. 183, 186 (2004). Put another way, Hush must show that Schwan's terminated her in retaliation for REDA-protected behavior. Taking the evidence in the light most favorable to Hush, a reasonable jury could find that Defendant terminated Hush for exercising rights protected by REDA.

Based on the temporal proximity between Hush's final complaint (August 19–20) and her termination (August 21), a jury could reasonably conclude that retaliation was a "substantial

factor" in Schwan's' termination decision. See Wiley v. United Parcel Serv., Inc., 102 F. Supp. 2d 643, 650 (M.D.N.C. 1999), aff'd, 11 Fed. Appx. 176 (4th Cir. 2001). Schwan's dismisses Hush's temporal proximity argument as mere conjecture. (Doc. No. 43 at 13). True, "the causal nexus between protected activity and retaliatory discharge must be something more than speculation." Smith v. Computer Task Group, Inc., 568 F. Supp. 2d 603, 613 (M.D.N.C. 2008) (citing Swain v. Elfland, 145 N.C. App. 383, 387 (2001)). But Hush's temporal proximity argument transcends speculation: "[A] closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient to make a prima facie case of causality." Shoaf v. Kimberly–Clark Corp., 294 F. Supp. 2d 746, 756 (M.D.N.C. 2003).

Even if Plaintiff's August 19–20 complaints are not REDA-protected, a reasonable jury taking the facts in the light most favorable to Hush could find that Schwan's termination of Hush was retaliation for Hush's indisputably REDA-protected worker's compensation claims. Hush filed her second worker's compensation claim in July 2019, and was fired the following month. At the time of her termination, Hush was still on work restrictions. While this temporal proximity argument is weaker than if Plaintiff's August 19–20 complaints constitute REDA-protected acts, it remains sufficient for Plaintiff to state a prima facie REDA claim as the non-movant for summary judgment.

Hush having established a prima facie REDA claim (and thus a prima facie wrongful discharge claim), the burden shifts to Schwan's to articulate a legitimate non-discriminatory reason for terminating Hush. To carry this burden, Schwan's must show "by the greater weight of the evidence that it would have taken the same unfavorable action in the absence of the protected activity of the employee." Wilkerson v. Pilkington N. Am., Inc., 211 F. Supp. 2d 700,

7

706 (M.D.N.C. 2002). Viewing the facts and drawing all inferences in the light most favorable to Hush, Schwan's cannot carry its burden.

At first blush, Schwan's' legitimate termination argument appears straightforward. Hush admits that she received and reviewed Schwan's' seatbelt policy. (Doc. No. 43 at 15). Hush further admits that she removed her seatbelt while at a stoplight. Id. The parties appear to agree that violation of Schwan's seatbelt policy necessarily results in the offending employee's termination. (Doc. No. 43 at 16); (Doc. No. 47 at 19). Hush's removal of her seatbelt at a stoplight violated the policy under which Schwan's claims she was terminated, because her vehicle was not "legally parked" at that time. (Doc. No. 43 at 15–16; Doc. No. 47 at 18). From this perspective, Hush's violation of Schwan's' zero-tolerance seatbelt policy constitutes a legitimate, non-discriminatory reason for terminating Hush.

But this perspective is inconsistent with the summary judgment standard, according to which the Court must view all facts and inferences in the light most favorable to the non-movant. From this perspective, genuine disputes of material fact preclude the Court from finding that Schwan's' purported reason for Hush's termination was legitimate. First, Hush argues that Schwan's' training and refresher materials on its zero-tolerance seatbelt policy prohibit removing the seatbelt while the vehicle is in motion, eschewing the "legally parked" requirement. Because Hush's vehicle was stopped when she removed her seatbelt, her actions were apparently consistent with her training and refresher materials. From this perspective, Defendant's decision—terminating Hush based on a policy contrary to the policy on which Hush was trained—could be viewed by a reasonable jury as inconsistent with legitimate reasons for termination.

8

Case 3:21-cv-00655-MOC-DCK   Document 52   Filed 04/26/24   Page 8 of 10

Second, Hush argues that even Schwan's employees responsible for terminating her had inconsistent interpretations of the company's seatbelt policy. Mr. Mackey's deposition testimony is consistent with the "in motion" policy, whereas Ms. Ries' deposition testimony favors the "legally parked" policy. The genuine dispute of material fact as to which policy applied, to whom, and when, precludes this Court from finding that Defendant has carried their burden as to legitimate reasons for termination.

Third and finally, Hush argues that the legitimate enforcement of Schwan's' seatbelt policy requires "immediate" termination of violating employees. (Doc. No. 47 at 19). Accepting Schwan's' "legally parked" formulation of the seatbelt policy, Schwan's was aware no later than the August 15 meeting that Plaintiff had inappropriately removed her seatbelt. But Schwan's did not terminate Hush for several days. In fact, Ms. Ries did not request approval for Hush's termination for violating the seatbelt policy until August 20, one day after Hush's last complaint. Viewing the facts in the light most favorable to Hush, Schwan's' lackadaisical enforcement of its "zero tolerance" seatbelt policy is inconsistent with Hush's legitimate, non-discriminatory termination for its violation.

Even assuming Schwan's could show a legitimate reason for termination and shift the burden back to Hush, a reasonable jury viewing the facts and inferences in Hush's favor could find that Schwan's justification for termination was mere pretext. True, Plaintiff cannot rely on temporal proximity alone to establish pretext. Shoaf, 294 F. Supp. 2d at 758; Banks v. Jefferson-Smurfit, 176 F. Supp. 2d 499, 509 (M.D.N.C. 2001); but see Webb v. K.R. Drenth Trucking, Inc., 780 F. Supp. 2d 409, 414 (W.D.N.C. 2011). But Hush's pretext argument is not predicated on temporal proximity alone. Instead, Hush can point to Mr. Whatton's remarks at the August 15

investigation meeting—indicating that she had done the right thing by removing her seatbelt—as evidence that her termination for violation of the seatbelt policy constitutes pretext.

More fundamentally, Hush can show that Schwan's' seatbelt policy, as advanced by Defendant, put her in an impossible position. Because the Schwan's vehicle did not have automatic windows, Hush had no choice but to briefly unbuckle her seatbelt to open her window and engage with the driver trying to get her attention. To comply with Schwan's apparent seatbelt policy, Hush was forced to choose between ignoring that driver and losing her job. Here, Hush might have been better off ignoring the driver. But what if a good Samaritan wanted to warn her that she had a flat tire, or that her tailgate was open, or that her truck was on fire? Viewing the facts in the light most favorable to Hush, a reasonable jury could conclude that enforcing the policy by terminating Hush could <u>only</u> have been pretext, since there is no legitimate justification for forcing drivers to choose between losing their job or ignoring potentially life-saving information.

Because Hush establishes prima facie REDA and unlawful discharge claims, and because a reasonable jury could find that Hush rebuts any legitimate justification for her termination as mere pretext without relying on temporal proximity alone, the Court will deny Schwan's motion for summary judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment (Doc. No. 43) is **DENIED**. This matter shall proceed to trial.

Max O. Cogburn Jr
United States District Judge

10

Case 3:21-cv-00655-MOC-DCK   Document 52   Filed 04/26/24   Page 10 of 10